ERIOUS JOHNSON, JR., OSB #130574
HARMON JOHNSON LLC
E-mail: Ejohnson.HJLLC@gmail.com
University Station Executive Suites
698 12th St. SE, Suite 240, Rm. 4
Salem, OR 97301
Tel: (503) 991-8545
Fax: (503) 622-8545

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **BRETT GOODMAN,**<br><br>　　　　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>**OREGON HEALTH AUTHORITY, OREGON STATE HOSPITAL**, and **ROBERT PETERSON**, in his individual and official capacity, **JERRY D. FRAMPTON**, in his individual and official capacity, **JOSEPH R. PICKERING**, in his individual and official capacity, **DALE O. JONES, JR.**, in his individual and official capacity, and **MICHAEL J. SWEET**, in his individual and official capacity,<br><br>　　　　　　　　　　　　　　Defendants. | Civil Case No. 21CV01265<br><br>**COMPLAINT**<br><br>(Civil Rights Claims under 42 U.S.C. § 1983)<br><br>**DEMAND FOR A JURY TRIAL** |

## I.  INTRODUCTION

1.　　　　Pursuant to 42 U.S.C. § 1983, Plaintiff alleges the deprivation of his rights as protected by state and federal constitutions. He seeks economic, noneconomic, and punitive damages, and equitable remedies, including attorney fees and litigation expenses/costs, including expert witness fees and expenses in an amount to be determined by a jury at trial.

PAGE 1 – COMPLAINT



## II.  JURISDICTION AND VENUE

2. This court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367 because Plaintiff asserts a cause of action arising under the Constitution, laws, or treaties of the United States. The court has supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1367.

3. Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

## III.  PARTIES

4. At all materials times herein, Plaintiff BRETT GOODMAN ("Goodman") is a resident of Salem, Oregon.

5. At all materials times herein, Defendant OREGON HEALTH AUTHORITY ("OHA") is an Oregon agency that oversees Oregon's health-related programs including behavioral health, public health, Oregon State Hospital for individual's requiring secure residential psychiatric care, and the state's Medicaid program called the Oregon Health Plan. Defendant OHA's main office is located at 500 Summer St. NE E-20, Salem, OR 97301. Defendant OHA is an "employer," pursuant to 42 U.S.C. § 2000e(b), and "person," pursuant to 42 U.S.C. § 2000e(a).

6. At all materials times herein, Defendant OHA had the power, right and duty to control the way Defendants listed herein carried out employment objectives and to see that all orders, rules, instructions, and regulations promulgated for the OHA and Defendant OSH were consistent with the laws of the State and the Constitution.

7. At all materials times herein, Defendant OREGON STATE HOSPITAL ("OSH") is a state-run psychiatric hospital that provides patient-centered, psychiatric treatment for adults



PAGE 2 – COMPLAINT


from throughout the state who need hospital-level care. Defendant OSH is located at 2600 Center St. NE, Salem, OR 97301. Defendant OSH is an "employer," pursuant to 42 U.S.C. § 2000e(b), and "person," pursuant to 42 U.S.C. § 2000e(a).

8. At all materials times herein, Defendant OSH had the power, right and duty to control the way the Individual Defendants listed herein carried out employment objectives and to see that all orders, rules, instructions, and regulations promulgated for Defendant OSH were consistent with the laws of the State and the Constitution.

9. At all materials times herein, ROBERT PETERSON, was Defendants OHA and OSH's employee, Plaintiff's Union Representative and a resident of Marion County, Oregon. Defendant Peterson is sued here in his official and individual capacity.

10. At all materials times herein, JERRY D. FRAMPTON, was Defendant OSH's Director of Operations and a resident of Polk County, Oregon. Defendant Frampton is sued here in his official and individual capacity.

11. At all materials times herein, JOSEPH R. PICKERING, was Defendant OSH's Director of Facilities and a resident of Linn County, Oregon. Defendant Pickering is sued here in his official and individual capacity.

12. At all materials times herein, DALE O. JONES, JR, was Defendant OSH's Maintenance and Operations Supervisor, Plaintiff's Direct Supervisor and a resident of Marion County, Oregon. Defendant Jones is sued here in his official and individual capacity.

13. At all materials times herein, MICHAEL J. SWEET, was Defendant OSH's Maintenance and Operations Supervisor, Defendant Peterson's Direct Supervisor and a resident of Marion County, Oregon. Defendant Sweet is sued here in his official and individual capacity.

////



## IV. FACTS

14.     On or about February 1, 2016, Plaintiff was hired by Defendant OHA as a Custodian in the Environmental Services Department for Defendant OSH.

15.     Between January 2017 to July 2017, Plaintiff was offered by Defendant OSH to work out of class as a laborer/student worker for the facilities department.

16.     Between September 2017 to March 2018, Plaintiff was again offered to work out of class for Defendant OSH as a laborer/student worker for the facilities department.

17.     It was during these two working out of class periods when Plaintiff first worked with Defendant Peterson, who was verbally abusive toward Plaintiff and would curse at and belittle Plaintiff. Also, around this time is when Defendant Peterson started referring to Plaintiff as "Fluffy".

18.     On or about October 6, 2019, Plaintiff was hired permanently by Defendant OSH for a laborer/student worker position, classification 4116, in facilities department.

19.     A Laborer/Student Worker assists journey level trade workers by doing a wide variety of routine and semiskilled tasks requiring sustained physical effort and the use of power equipment and tools specific to the assignment. Employees in this classification perform basic maintenance and repair on small equipment, maintain work records as required, maintain tool inventory, and use computers for inventory control. Computerized work order systems may be used by employees in this classification. Regular contact in person or by telephone with other employees in the work unit may be required to exchange information about work assignments and get additional instructions. The employee may have regular contact with employees in other units, vendors, and the public to exchange information related to doing the assigned work.

20.     Sometime during January 2020 to February 2020, Plaintiff disclosed to Defendant



Peterson that Plaintiff was gay. Plaintiff and Defendant Peterson were talking about relationships, and Plaintiff felt comfortable enough telling Defendant Peterson about his status as a gay man since Defendant Peterson was Plaintiff's Union Representative.

21.     After Plaintiff disclosed this information, Defendant Peterson seemed shocked and did not say much after that and got quiet. Shortly after that, Defendant Peterson started physically assaulting Plaintiff. Defendant Peterson also began referring to Plaintiff as a "pussy".

22.     Defendant Peterson's assault on Plaintiff consisted of:

   a. Slapping Plaintiff in the back of his head
   b. Punching Plaintiff in his stomach or in his arm
   c. Kicking Plaintiff
   d. Shoving Plaintiff
   e. Tackling Plaintiff to the ground
   f. Knocking hot coffee out of Plaintiff's hand

23.     These assaults would occur in the downstairs area of Defendant OSH's facility's building basement at random times when Plaintiff was by the badge readers or just passing through. Defendant Peterson's office was downstairs with the door usually open.

24.     Plaintiff never provoked Defendant Peterson to assault him. The assaults were random occurrences.

25.     Plaintiff sometimes stood, stone-faced and said nothing; other times, Plaintiff would exclaim, "really, man!"; and other times Plaintiff would just walk away quietly.

26.     These random, unprovoked assaults by Defendant Peterson on Plaintiff were witnessed by Jeffrey Ficker, Jaime Martinez, Scott Vancamp, and Roger Henninger.

27.     Sometime during the Spring of 2020, Defendant Peterson had Painter, Steven Keene, paint Plaintiff's locker pink and sprinkled with glitter. Despite the remainder of the lockers in the area being painted grey.



 

28.     Also, around early Spring 2020, Defendant Peterson had a pink iPhone ordered for, and assigned to, Plaintiff.

 

29.     Plaintiff signed off on the mobile device agreement form, along with his manager signing off on it.

30.     Plaintiff later discovered that Defendant Peterson asked the Mobile Device Coordinator, Emily Heberlein, to order Plaintiff a pink phone as his state issued device. Despite the rest of the maintenance crew being issued black phones.

31.     Plaintiff never reported these random, unprovoked assaults by Defendant Peterson, or his locker being painted pink or him being issued a pink iPhone because Defendant Peterson was Plaintiff's Union Representative. So, Plaintiff figured that if Defendant Peterson

PAGE 6 – COMPLAINT



was doing these things, there was no way for Plaintiff to stop him. And because Defendant Peterson appeared to be close friends with Defendant OSH Directors and Managers, who observed and were aware of his behavior toward Plaintiff and did nothing.

32. Plaintiff's reticence was reinforced by Defendant Peterson's frequent threats, telling Plaintiff, "if you ever screw me over, I will bury you."

33. On or about February 5, 2020, Plaintiff was instructed by Defendant Pickering to start working with Douglas Ruble, Defendant OSH's Medical Equipment Coordinator.

34. On or about September 29, 2020, Plaintiff contacted Defendant Jones regarding Reclassification and Change in Compensation as Plaintiff believed that his new work assignment warranted a change. Plaintiff never received a response from Defendant Jones.

35. On or about December 29, 2020, Plaintiff contacted Defendant Pickering to ask permission to modify Plaintiff's original Monday through Thursday 6:30AM to 5:00PM to start working 1:00PM to 11:30PM. Plaintiff told him the reason for the requested change was to have better access to inspect equipment. Plaintiff's real reason was to get away from Defendant Peterson. (He approved this schedule change)

36. On or about February 12, 2021, Plaintiff complained to Human Resources about Defendant Peterson's behavior and his grievance.

37. On or about February 18, 2021, Plaintiff had a meeting with his Management to discuss his Grievance followed by a meeting with Annie Olver from Human Resources to discuss Robert Peterson.

38. On or about February 25, 2021, Defendant Pickering denied Plaintiff's Step 1 Grievance, concluding: "After very carefully considering the evidence provided to me, I must respectfully deny this grievance and consider this grievance as notice that the employee no



longer wishes to participate in the opportunity to work in the medical equipment department and if this is the intent, Brett will be returned to his previous duties as a general Laborer in facility maintenance."

39. On or about March 1, 2021, Plaintiff was no longer permitted to close out preventative maintenance work orders on the Z-Link work order system.

40. On or about March 5, 2021, Plaintiff filed a complaint with the Bureau of Labor and Industries ("BOLI").

41. On or about March 8, 2021, Plaintiff files a report with the Oregon State Police.

42. On or about March 8, 2021, Plaintiff was called into a meeting with Defendants Pickering and Jones, wherein Plaintiff's schedule was changed to Tuesday through Friday 6:30AM to 5:00PM.

43. On or about March 10, 2021, Plaintiff files a complaint with the Federal Bureau of Investigation ("FBI").

44. On or about March 11, 2021, Plaintiff files a Step 2 Grievance with his union.

45. On or about March 12, 2021, Plaintiff files a Tort Claim Notice with the Oregon Department of Administrative Services ("DAS") Risk Management.

46. On or about March 17, 2021, Defendant Jones informed Plaintiff that his new work assignments were to clean bathrooms, empty trash, mop, and sweep the facilities building Tuesday through Friday, during the last hour of Plaintiff's shift.

47. On or about March 19, 2021, Plaintiff files a complaint with the Oregon office of Equity and Inclusion ("OEI").

48. On or about March 25, 2021, Defendant Jones informed Plaintiff that his priority as a laborer/student worker was to escort contractors and when Plaintiff was not needed, he was



to do his cleaning tasks and any Preventive Maintenance that Plaintiff was assigned. Defendant Jones also informed Plaintiff that work orders would be removed from Plaintiff's dashboard as of March 26, 2021.

49.     On or about March 26, 2021, all of Plaintiff's Z-Link Preventive Maintenance Work Orders were deleted and his Administrative Privileges were revoked.

50.     On or about April 14, 2021, SEIU informs Plaintiff that they will no longer be pursuing his grievance.

51.     On or about April 21, 2021, one of Plaintiff's work desks had been flipped over and the other desk emptied out with all his stuff placed on the top of it. Plaintiff was also missing a black desk mat. HR verified that Defendant Pickering had authorized one of Plaintiff's co-workers to go through Plaintiff's desk without notice to Plaintiff or his permission.

52.     Ever since Plaintiff lodged his complaints with Defendant, filed his grievances and reported Defendant Peterson's behavior to the State Police, he has been the subject of retaliation and hostility by his co-workers and existing management team. For example: Plaintiff has not been treated in the same light and not being communicated with by his peers or management, and given the "Cold Shoulder Treatment," with co-workers avoiding him by walking in the other direction.

 a. Plaintiff has been yelled at and threatened with Insubordination by his lead worker Roger Henninger who is friends with Dale Jones.
 b. Mr. Henninger is routinely short and curt toward Plaintiff in his tone when asking Plaintiff about work assignments. Giving Plaintiff the feeling that Mr. Henninger is targeting him.

PAGE 9 – COMPLAINT



    c. A considerable number of Plaintiff's co-workers are friends with both Defendant Peterson and Defendant Jones outside of work. And ever since their removal from the workplace, the cold shoulder treatment/hostility toward Plaintiff increased.

    d. Plaintiff has been excluded from the team, and is not getting the support Plaintiff needs to be successful in his current position.

53. On or about August 13, 2021, due to the intimidation, discrimination, hostility and retaliation Plaintiff has endured, Plaintiff sought and was provided a "voluntary demotion" from his current position.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Freedom of Expression**
**First Amendment Violation**
**Against Individual Defendants**

54. Plaintiff incorporates paragraphs 1 through 53 as if fully set forth herein.

55. At all times material, the Individual Defendants were acting under "color of state law."

56. Plaintiff had a First Amendment right to "come out" as gay to Defendant Peterson.

57. Defendant Peterson's assaults, threats, harassments, having Plaintiff's locker painted pink and ordering Plaintiff a pink iPhone were all in retaliation for Plaintiff exercising his Constitutional right to "come out" to him.

58. The Individual Defendants were aware of Defendant Peterson's unlawful constitutional violation directed at Plaintiff and directed, engaged in, contributed to, fostered and ratified Defendant Peterson's unconstitutional behavior toward Plaintiff.

59. The Individual Defendants further violated Plaintiff's First Amendment right by



working him out of class without proper compensation.

60. The Individual Defendants further violated Plaintiff's First Amendment right by removing appropriately assigned work responsibilities from Plaintiff.

61. The Individual Defendants further violated Plaintiff's First Amendment right by inappropriately assigning Plaintiff work responsibilities.

62. As a direct and proximate result of Defendants' unlawful acts, Plaintiff suffered economic damages in the form of lost wages for taking a voluntary demotion to avoid the intolerable nature of Defendants' actions, and working out of class without proper compensation, with prejudgment interest in an amount to be determined at trial.

63. As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

64. Defendants' conduct toward Plaintiff demonstrated a wanton, reckless or callous indifference to the constitutional rights of Plaintiff, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

65. Plaintiff seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Agency Liability
### Deliberate Indifference
### Against Defendant OHA

66. Plaintiff incorporates paragraphs 1 through 65 as if fully set forth herein.

////

PAGE 11 – COMPLAINT



67. The failures of Defendant OHA described herein were taken under "color of state law."

68. By the acts described above, Defendant OHA is liable for the acts of its employees and Defendant OSH.

69. Defendants OHA failed to train the Individual Defendants on how not to violate the Constitutional rights of individuals who express their sexual orientation, such as Plaintiff.

70. Defendant OHA's failure to train the Individual Defendants evidences a deliberate indifference to Plaintiff's freedom of expression and association as guaranteed by the First Amendment of the US Constitution.

71. It was foreseeable that Defendant OHA's failures to train the Individual Defendants would result in a deprivation of Plaintiff's freedom of expression and association as guaranteed by the First Amendment of the US Constitution.

72. As a direct and proximate result of Defendant OHA's unlawful acts, Plaintiff suffered economic damages in the form of lost wages for taking a voluntary demotion to avoid the intolerable nature of Defendants' actions, and for working out of class without proper compensation, with prejudgment interest in an amount to be determined at trial.

73. As a direct and proximate result of Defendant OHA's unlawful acts, Plaintiff has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

74. Defendant OHA's conduct toward Plaintiff demonstrated a wanton, reckless or callous indifference to the constitutional rights of Plaintiff, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

75. Plaintiff seeks recovery of all other equitable relief and punitive damages as



provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Employer Liability
### Custom, Policy and Practice
### Against Defendant OSH

76. Plaintiff incorporates paragraphs 1 through 75 as if fully set forth herein.

77. Defendants OSH has a custom, policy, and practice of allowing its employees to foster a hostile working environment towards its gay employees, and to retaliate against those individuals who report such unlawful conduct.

78. This custom, policy and practice is evidenced by Defendant OSH's directors, managers and supervisors directing, engaging in, contributing to, fostering and ratifying the hostile and retaliatory behavior toward Plaintiff described above.

79. It was foreseeable that Defendant OSH's custom, policy and practice would lead to the violation of Plaintiff's First Amendment rights as claimed herein.

80. As a direct and proximate result of Defendants OSH's custom, policy and practice, Plaintiff suffered economic damages in the form of lost wages for taking a voluntary demotion to avoid the intolerable nature of Defendants' actions, and for working out of class without proper compensation, with prejudgment interest in an amount to be determined at trial.

81. As a direct and proximate result of Defendants OSH's custom, policy and practice, Plaintiff has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

82. Defendants OSH's custom, policy and practice demonstrated a wanton, reckless or callous indifference to the constitutional rights of Plaintiff, which warrants an imposition of



punitive damages in such amounts as the jury may deem appropriate to deter future violations.

83.     Plaintiff seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1.      Economic damages in the form of lost wages for out of class work performed without proper compensation, and prejudgment interest in an amount to be determined at trial;

2.      Non-economic damages consistent with the claims above against Defendants in amounts to be determined at trial;

3.      All available equitable relief and damages in amounts to be determined at trial, consistent with the claims above against Defendants;

4.      Punitive damages consistent with the claims above against Defendants in amounts to be determined at trial;

5.      Reasonable attorneys' fees and litigation expenses/costs herein, including expert witness fees and expenses, consistent with the claims above against defendants; and

6.      Grant such other relief as is just and proper.

DATED this 25th day of August, 2021.

<div style="text-align: right;">
HARMON JOHNSON LLC

_____
Erious Johnson, Jr. OSB No. 130574
Email: ejohnson.HJLLC@gmail.com
Attorney for Plaintiff
</div>

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL**

PAGE 14 – COMPLAINT

HARMON JOHNSON LLC
698 12TH ST SE, STE 240, NO. 4
SALEM, OR 97301
EJOHNSON.HJLLC@GMAIL.COM
(503) 991-8545 (PHONE)
(503) 622-8545 (FAX)